390 A.2d 1350

**COMMONWEALTH of Pennsylvania**

v.

**Larry ARTHUR, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1978.

Decided July 12, 1978.

Larry E. Stone, Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Dauphin County, Criminal Division, by the appellant-defendant, Larry Arthur, following a

conviction by a jury of aggravated robbery; and from the denial of post-trial motions.

The facts relevant to the sole issue on appeal are as follows:

On May 13, 1973, a robbery occurred at the Senate Theater in Harrisburg. The receipts were taken at gunpoint by two men, one of whom was armed. King Thompson was arrested in connection with this incident at which time he implicated the appellant as his accomplice. Thompson later pleaded guilty to this robbery and received a sentence of five to fifteen years.

Thompson testified at appellant's trial as a defense witness. He stated that the appellant had not been with him on the night of the robbery, but he couldn't remember who had been his accomplice. Thompson also denied that he had reported appellant's involvement to the police although he admitted he disliked him. The Commonwealth produced two identification witnesses, the manager and an employee. The manager, Christine Dubs, testified that her wallet was taken during the robbery and that she was sure appellant Larry Arthur was the man with the gun, whom she had kept her eye on. She stated that she was sure because "you just never forget somebody that is going to kill you, who you think is going to kill you." The cashier, Theodore Homziak, although he was told to lie facedown on the floor, testified that he also was looking right at the man with the gun, because, "if I'm going to be held up, I might as well get a good look at him." He stated he was certain appellant was the man with the gun because he had looked directly at him.

The appellant produced an alibi witness, Gloria Alton, his common-law wife, who testified that appellant was babysitting while she was at work on the day in question.

Appellant then took the stand and denied any participation in the incident.

On December 13, 1976, a jury found appellant guilty of aggravated robbery. Appellant filed post-trial motions challenging the sufficiency of the evidence to convict. On

March 2, 1977, appellant filed a motion for a new trial based upon after-discovered evidence. This motion was denied by the trial court on April 1, 1977 based upon the conclusion that the "new" evidence offered did not qualify as after-discovered evidence. This appeal followed.

■■ Before a new trial may be granted on the basis of after-discovered evidence, we have held that the evidence must be discovered after trial; must be such that it could not have been obtained at the time of trial by the exercise of reasonable diligence; must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result. *Commonwealth v. Schuck*, 401 Pa. 222, 164 A.2d 13 (1960); *Commonwealth v. Johnson*, 228 Pa.Super. 364, 323 A.2d 295 (1974).

The after-discovered evidence submitted by the appellant does not meet those requirements. Appellant alleges that his counsel on February 23, 1977, first became aware of the fact that Thompson was the perpetrator of the robbery; that the accomplice was shorter and darker in complexion than Thompson, and that the real accomplice was currently incarcerated in Huntingdon on other charges. Appellant, through his counsel, further alleges that he then learned for the first time that Thompson made certain admissions to one, Lawrence Stringer, as to appellant's innocence and of Thompson's intent to "put it on Arthur" because of prior personal differences. Defense counsel states that he first became aware of Thompson's identity and involvement on the day of trial.

Clearly, the above information was received following the trial. However, considering that Thompson testified that appellant was not his accomplice, it can hardly be said that the balance of the information could not have been obtained from Thompson, assuming that defense counsel met him for the first time on the day of trial. Thompson testified that he was unable to remember the name of his accomplice. Defense counsel could at that point have requested that he

describe the individual; inquire as to which man had held the gun, and could have inquired as to the possible whereabouts of the accomplice. This information could have been obtained by the exercise of reasonable diligence. The fact that Thompson made certain admissions to a third party concerning the innocence of appellant and that he had "put it on Arthur" because of prior differences is not new evidence in view of Thompson's testimony at appellant's trial. In addition, at no time did Thompson during the trial "put anything on Arthur". On the contrary, he denied that appellant had been his accomplice.

Further, had the above requirements been met, we are unable to see how the evidence offered would compel a different result. In *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975), the Supreme Court held that where the testimony offered was not unlike that of a co-conspirator, who is already in prison and realistically has little to lose by attempting to free his partner, it should be examined with great caution. *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970). Also, in *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976), after a complete confession to the crime was made by a second party, arrested subsequent to the appellant's conviction for murder, and after a plea had been entered to voluntary manslaughter, the Supreme Court held that the testimony should be carefully scrutinized. Because of the law of double jeopardy, the man had nothing to lose by such a confession. In the case before us, Thompson, having already been sentenced for the same crime, had nothing to lose by attempting to free the appellant.

Closely reexamining all the testimony in light of the positive identification of appellant, unshaken on cross-examination, and considering the alleged "after-discovered evidence" submitted by the appellant, we find no clear abuse of discretion on the part of the trial court. *Commonwealth v. Mosteller*, 446 Pa. 83, 284 A.2d 786 (1971); *Commonwealth v.*

*Swanson,* 432 Pa. 293, 248 A.2d 12 (1968); *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975).

Accordingly, the judgment of sentence is affirmed.